## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| PROLIANCE INTERNATIONAL, INC., *et al.* | : | Chapter 7 |
| | : | |
| | : | Case No. 09-12278 (CSS) |
| Debtors | : | (Jointly Administered) |
| _____ | : | |
| | : | |
| George L. Miller, | : | |
| | : | Adv. Case No. 11-52514 (CSS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JNJ Logistics LLC, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

### OPINION[1]

WHITE AND WILLIAMS LLP
James S. Yoder
Sean A. Meluney
824 N. Market Street, Suite 902
Wilmington, DE  19899-0709

Counsel for JNJ Logistics LLC

DILWORTH PAXSON LLP
Peter C. Hughes
One Customs House – Suite 500
704 King Street
Wilmington, DE  19801

Counsel for George L. Miller

Date: August 14, 2014

Sontchi, J. _____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

**INTRODUCTION**

The Trustee seeks to recover preferential transfers from Defendant. In response, Defendant seeks summary judgment asserting that its preference exposure should be reduced by subsequent new value it provided to the Debtors; to which the Trustee filed his own motion for partial summary judgment contesting, in part, Defendant's new value defense.

The question before the Court is whether an (alleged) preferential transfer may be reduced by subsequent new value regardless of whether it was "paid" or "unpaid" prior to the Petition Date,[2] or whether the defense is only to the extent that the subsequent new value remained "unpaid." As set forth below, the Court adopts the subsequent advance approach and finds that Defendant's preference exposure is reduced upon the application of paid and unpaid subsequent new value. Thus, the Court will grant Defendant's motion for partial summary judgment and will deny Trustee's cross-motion.

**STATEMENT OF FACTS**

**A. Background and Procedural History**

On July 2, 2009 (the "Petition Date"), each of the debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Approximately one year later, on July 14, 2010, the Court entered an Order converting these cases to Chapter 7, effective as of July 22, 2010. Upon conversion, the United States Trustee appointed George L. Miller as Chapter 7 Trustee (the "Trustee") in these cases.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them *infra*.

Prior to the Petition Date, JNJ Logistics LLC (the "Defendant") provided freight transport services for the Debtors. More specifically, Defendant transported auto parts for the Debtor.

In July 2011, Trustee filed a complaint (the "Adversary Action") against Defendant, which Defendant answered.

In the Adversary Action, Trustee seeks return of $548,035.66 in (alleged) preferential transfers. The parties agree that Defendant is entitled to a subsequent new value defense in the amount of $49,366.28, resulting from invoices "open" (i.e. unpaid) as of the Petition Date (referred to herein as "Unpaid SNV"). The parties disagree regarding the validity of Defendant's asserted subsequent new value defense for invoices that were paid prior to the Petition Date in the amount of $222,045.11 ("Paid SNV" also referred to herein as the "subsequent advance approach").

Thereafter, Defendant filed its Motion for Partial Summary Judgment (the "Motion") regarding the validity of Defendant's Paid SNV defense to the preference action.[3] The Trustee responded with his own Cross-Motion for Partial Summary Judgment (the "Cross-Motion") on the same issue.

## B. Relevant Facts

The parties agree on the following: (i) in the 90-days prior to the Petition Date, the Debtors made 12 transfers totaling $548,035.66 (the "Transfers") to Defendant; (ii) the

---

[3] The parties agree that, after the issues discussed herein, the Trustee will have an alleged preference claim against Defendant in the amount of $276,624.27, which may be subject to other defenses by Defendant. This Opinion relates solely to the subsequent new value defense raised by Defendant and contested by the Trustee.

Transfers were property of one or more of the Debtors; and (iii) the Transfers were made

by check or wire transfer.  In addition, the parties agree that Defendant has a subsequent

new value defense to the preference claims in the amount of $49,366.28, which reflects

open (i.e. unpaid) invoices as of the Petition Date.

The parties contest Defendant's Paid SNV defense to the preferential Transfers in

the amount of $222,045.11.  The motions before the Court concern this portion of

Defendant's alleged defense based on Paid SNV.  This is the Court's opinion thereon.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2) and this Court has the judicial power to enter

a final order.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings

pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that summary

judgment should be granted if the movant shows that "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law,"[4] after

considering the "pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits."[5]

---

[4] Fed. R. Civ. P. 56(a).

[5] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In deciding a motion for summary judgment, all factual inferences must be viewed in the light most favorable to the nonmoving party.[6]  After sufficient proof has been presented to support the motion, the burden shifts to the nonmoving party to show that genuine issues of material fact still exist and that summary judgment is not appropriate.[7] A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

In order to demonstrate the existence of a genuine issue of material fact in a jury trial, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant.[9]  The same principles apply in a bench trial where the judge is the ultimate trier of fact; the nonmovant must obviate an adequate showing to the judge to find for the nonmovant.[10]  In a situation where there is a complete failure of proof concerning an essential element of the nonmoving party's case, Rule 56(c) necessarily renders all other facts immaterial and mandates a ruling in favor of the moving party.[11]

---

[6]  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).

[7]  *Id.* at 587.

[8]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[9]  *Olson v. Gen. Elec. Astrospace,* 101 F.3d 947, 951 (3d Cir. 1996).

[10]  *In re Broadstripe, LLC,* 444 B.R. 51, 76-77 (Bankr. D. Del. 2010) (citing *Leonard v. General Motors Corp. (In re Headquarters Dodge),* 13 F.3d 674, 679 (3d Cir. 1993).

[11]  *Id.* at 77-78 (citing *Celotex Corp.,* 477 U.S. at 317-18).

The standards under which to grant or deny summary judgment do not change because cross-motions are filed.[12]  Each party still bears the initial burden of establishing a lack of genuine issues of material fact.  When faced with cross-motions for summary judgment, the court must consider each motion independently.[13]  Moreover, although it maybe implied from the filing of a cross-motion that the parties agree that no material issues of fact exist, "the court is not bound by this implicit agreement and is not required to enter a judgment for either party."[14]

## DISCUSSION

### A.    Preferential Transfers

"A preference, in simplest terms, is an eve-of-bankruptcy transfer to a creditor. The creditor that receives a preferential payment recovers 100% on its claim where, in all likelihood, other unsecured creditors receive less."[15]  The six requirements that the Trustee must establish to make a preference voidable are: (1) a transfer is made; (2) on account of antecedent debt; (3) to or for the benefit of the creditor; (4) while the debtor was insolvent; (5) within 90 days of the filing of the petition; (6) that left the creditor better off than it would have been if the transfer had not been made and it had asserted its claim in a chapter 7 liquidation.[16]

---

[12] *Williams v. Philadelphia Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993).

[13] *Panhandle Eastern Pipe Line Co. v. Utilicorp United*, 928 F. Supp. 466, 470 (D. Del. 1996).

[14] *WorldCom, Inc. v. GE Global Asset Mgmt. Servs. (In re WorldCom, Inc.)*, 339 B.R. 56, 62 (Bankr. S.D.N.Y. 2006).  *See also Enron Corp. v. Whalen (In re Enron Corp.)*, 351 B.R. 305, 310 (Bankr. S.D.N.Y. 2006).

[15] *Friedman's Inc. v. Roth Staffing Companies, L.P. (In re Friedman's Inc.)*, Case No. 09-10161, 2011 WL 5975283, *2 (Bankr. D. Del. Nov. 30, 2011) (citations omitted).

[16] 11 U.S.C. § 547(b).

## B.  The Subsequent New Value Defense

Defendants may invoke the "subsequent new value" defense under section 547(c)(4) to limit or eliminate its liability under section 547(b).  Section 547(c)(4) states:

> [t]he trustee may not avoid under this section a transfer . . . to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor . . . on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.[17]

"New value" is defined under section 547(a)(2) as "money or money's worth in goods, services, or new credit . . .that is neither void nor voidable by the debtor or the trustee under any applicable law."[18]  As this Court has previously stated:

> The subsequent new value defense is intended to encourage creditors to work with companies on the verge of insolvency. In addition, it is designed to ameliorate the unfairness of allowing the trustee to avoid all transfers made by a debtor to a creditor during the preference period without giving any corresponding credit for advances of new value that benefitted the debtor.[19]

In addition to these policy considerations, section 547(c)(4) "codifies the concept that the estate, and consequently the other creditors, are not harmed by the transfers.  If the transfer is within this exception, it was made in exchange for new value and the new value augments the estate in the same proportion as the value of the transfer; therefore, the estate does not suffer any injury."[20]

---

[17] 11 U.S.C. § 547(c)(4)(B).

[18] 11 U.S.C. § 547(a).

[19] *Friedman's Inc.*, Case No. 09-10161, 2011 WL 5975283 at *2 (citations omitted).

[20] *Id.*

## C. Parties' Arguments

The Trustee argues that by Defendant raising the subsequent new value defense, Defendant is admitting that the Transfers are "otherwise avoidable" (i.e. that the Transfers are avoidable as preferential transfers).  Defendant appears to respond that regardless of the avoidability of the Transfers, Defendant has an affirmative defense based on the subsequent new value affirmative defense.  Although the Court appreciates the parties' arguments, in light of the fact that both parties are seeking summary judgment,[21] if the Court were not to determine whether the Transfers are avoidable prior to ruling on Defendant's affirmative defense, the Court's opinion would be advisory in nature.   As such, the Court cannot rule on the affirmative defense without first determining whether the Transfers are, in fact, avoidable.  Such analysis will be discussed *infra*.

In addition, Defendant argues that its preference liability should be reduced by its subsequent new value defense.  Defendant urges the Court should adopt the subsequent advance approach which would reduce Defendant's alleged preference considerably as the defense would include Unpaid SNV and Paid SNV.  The Trustee argues that the Court should adopt the "remains unpaid" approach (i.e. only reduce the preferential claim by the Unpaid SNV), which would increase the Trustee's potential recovery on its preference complaint.

---

[21] If this matter was presented as a motion to dismiss, the Court would be in the position to find, if inclined, that the Trustee's arguments were not plausible in light of the asserted affirmative defenses; however, in a motion for summary judgment the Court is making a determination as a matter of law, as such, each element must be decided based on the facts presented. *See* Fed. R. Civ. P. 56(a).

**D. Jurisdictional Split**

There is a jurisdictional split regarding the interpretation and application of section 547(c)(4)(B).  Some courts conclude that section 547(c)(4)(B) should be read to mean that new value *must remain unpaid* at the end of the preference period in order to be used as a defense to a preferential claim.  Other courts have concluded that section 547(c)(4)(B) does not contain a "remains unpaid" requirement, rather the court must determine if "subsequent advances" were made by the creditor.[22]

**i.    Remains Unpaid Approach**

In *New York City Shoes, Inc. v. Bently International, Inc.*,[23] the Third Circuit Court of Appeals stated:

> The three requirements of section 547(c)(4) are well established.  First, the creditor must have received a transfer that is otherwise voidable as a preference under § 547(b).  Second, after receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis.  Third, the debtor must not have fully compensated the creditor for the "new value" as of the date that it filed its bankruptcy petition.  If a creditor satisfies these elements, it is entitled to set off the amount of the "new value" which remains unpaid on the date of the petition against the amount which the creditor is required to return to the trustee

---

[22] *Wahoski v. American & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123, 126-127 (2009) (*quoting* Noah Falk, *Section 547(c)(4): The Subsequent New Value Exception Defense to Preferences*, 2004 Ann. Surv. Of Bankr. Law Part 1, § Q (Norton October 2004)).  *Compare, e.g., Matter of Prescott*, 805 F.2d 719, 732 (7th Cir. 1986) (remains unpaid approach); *Charisma Investment Co., N.V. v. Airport Systems, Inc. (In re Jet Florida Sys., Inc.)*, 841 F.2d 1082, 1083 (11th Cir. 1988) (remains unpaid approach); *with Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.)*, 902 F.2d 257 (4th Cir. 1990) (subsequent advance approach); *Laker v. Vallette (Matter of Toyota of Jefferson, Inc.)*, 14 F.3d 1088, 1091 (5th Cir. 1994) (subsequent advance approach); *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228 (9th Cir. 1995) (subsequent advance approach); *Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 328 (8th Cir. 1997) (subsequent advance approach).

[23] *New York City Shoes, Inc. v. Bentley Intern'l, Inc. (In re New York City Shoes, Inc.)*, 880 F.2d 679 (3d Cir. 1989).

on account of the preferential transfer it received.  If a creditor satisfied these elements, it is entitled to set off the amount of the "new value" which **remains unpaid** on the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received.[24]

Subsequently, the Third Circuit held that a portion of the above-quoted statement in *New York Shoes* was *dicta* to the extent that the Third Circuit's ruling did not rely on a specific portion of the above captioned test.[25]  To date, the Third Circuit has not issued an opinion germane to the "remains unpaid" portion of its statement in *New York Shoes*.  As such, the Third Circuit has not (yet) weighed in on the remains unpaid/subsequent advance dispute.

However, in reliance and consideration of the Third Circuit's statements in *New York Shoes,* many Courts have held that new value must remain unpaid as of the petition date.[26]  Courts have held that new value that has been paid by the debtor prior to the petition date is not eligible for offset under section 547(c)(4) because paid new value does

---

[24]  *Id.* at 680 (emphasis added, citations omitted); *see also In re Winstar Communications, Inc.*, 554 F.3d 382, 402 (3d Cir.2009) ("This court has held that § 547(c)(4) imposes three requirements ... (3) 'the debtor must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition.' ").  However, the Third Circuit later stated that such ruling as to third prong of this test was *dicta*. *Friedman's Liquidating Trust v. Roth Staffing Co. LP (In re Friedman's Inc.)*, 738 F.3d 547, 551 (3d Cir. 2013) (hereinafter "*Friedman's*").  The Third Circuit stated that "extra-statutory language we included regarding the petition date was not germane to our analysis."  *Id.*  In *Friedman's*, the Third Circuit broadly held that where "an otherwise unavoidable transfer" is made after the filing of a bankruptcy petition, it does not affect the new value defense (with one exception related to assumption of executory contracts and one reservation related to reclamation demands).  In effect, the former *dicta* of the third prong is now binding precedent in this Circuit.  However, the Third Circuit did not address the "unpaid" portion of this excerpt.

[25]  The Third Circuit then considered the third-prong and broadly held that where "an otherwise unavoidable transfer" is made after the filing of a bankruptcy petition, it does not affect the new value defense.  *Friendman's*, 738 F.3d at 560-61.  In other words, the Third Circuit's ruling in *Friedman's* conformed to its "statement" in *New York Shoes*.

[26]  *See supra* at n. 23.

not represent the return of a preferential transfer to the estate. The Court in *American International Airways*[27] explained why the new value must go unpaid:

> The extension of new value in an amount equal to a preference "in effect returns the preference to the estate." Since the preference has in effect been returned, the estate has not been harmed. Section 547(c)(4) merely recognizes this reality. The rationale of § 547(c)(4) is simple — The creditors have not been harmed, the estate has not been diminished, because new inventory has been supplied. In fact, such activity is to be encouraged as it allows the business a further chance to solve its problems and, possibly, avoid the need of filing. In reality, it puts the debtor on a C.O.D. basis. It is as if the creditor is being paid in advance of shipments, rather than being paid for antecedent debts. However, if the creditor obtains a security interest to secure payment of the new value or is paid for the new value by the debtor, there is in effect no return of the preference and the section 547(c)(4) defense is not available to the creditor. In summary, we hold as a matter of law that the defendant is not entitled to offset against the claimed preferential transfers any new value which was subsequently paid for by the debtor.[28]

Similarly, the court in *In re Hancock-Nelson Mercantile Co.,*[29] *Inc.* held:

> Allowing the offset of a *satisfied* subsequent advance may give lip service to the statutory goal of encouraging continued dealings with distressed businesses, but it does so at the cost of tipping the statutory balance of economic considerations over to the creditor-supplier's side. . . . Where, however, the debtor later pays for the new value, that value passes back out of the debtor's operations, to the creditor-supplier; as a result, the § 547(c)(4) defense is not available to the creditor. This

---

[27] *Begier v. Airtech Services, Inc. (In re Am. Int'l Airways, Inc.)*, 56 B.R. 551, 554-55 (Bankr. E.D. Pa. 1986).

[28] *Id.* at 554-55 (citations and internal quotation marks omitted). *See also Braniff, Inc. v. Sundstrand Data Control, Inc. (In re Braniff, Inc.)*, 154 B.R. 773, 786 (Bankr. M.D. Fla. 1993) (supplier's subsequent advances to debtor constituted "new value," for which supplier was entitled to credit, only to extent that they remained unpaid by debtor as of debtor's bankruptcy filing).

[29] *Iannocone v. Klement Sausage Company, Inc. (In re Hancock-Nelson Mercantile Co., Inc.)*, 122 B.R. 1006 (Bankr. D. Minn. 1991).

makes every bit of sense; the subsequent advance no longer remains an unpaid receivable on the creditor-supplier's books, so there is no reason why it should get 'credit' for it in the larger-scale adjustment of relationships which takes place in the avoidance of preferences.[30]

### ii.    Subsequent Advance Approach

In *In re Check Reporting Services, Inc.*,[31] the Court analyzed the language in section 547(c)(4)(B) – including the double-negative of "otherwise unavoidable" - and determined that the statute was unambiguous.  The court concluded that the statute had four possible meanings:

> Four events might occur after a creditor gives the debtor new value.  The debtor might (1) make no transfer at all; (2) make an avoidable transfer; (3) make a transfer unavoidable under either § 547 or § 547(c)(4), depending upon the interpretation adopted; or (4) make an otherwise unavoidable transfer.  The statute requires for the assertion of new value that the debtor "did not make an otherwise unavoidable transfer."  This could be satisfied in all but one of the four circumstances outlined above.  It could be satisfied if the debtor did make an avoidable transfer (possibility 2) . . . . But it could also be satisfied if the debtor made *no transfers at all* (possibility 1) to the creditor after new value was given.  If the debtor made no transfers at all after the new value was given, it is easily understood that the exception should apply.  By the same token, if the transfer to the creditor after the new value was given was avoidable, the transfer was effectively the same as no transfer at all, and the creditor should still be able to get credit for the new value.[32]

The court concluded that the word "otherwise" refers to transfers that are avoidable under section 547(c)(4), and rejected the argument that "otherwise" refers to transfers that

---

[30] *Id.* at 1016 (emphasis supplied, citations omitted).

[31] *Boyd v. The Water Doctor (In re Check Reporting Servs., Inc.)*, 140 B.R. 425 (Bankr. W.D. Mich. 1992).

[32] *Check Reporting Servs.*, 140 B.R. at 435 (emphasis in the original).

are avoidable under sections of the Bankruptcy Code other than section 547.  Although

the court found that the statute was unambiguous, the *Check Reporting Services* court

continued to look at legislative history and found that the court's interpretation was

harmonious with the legislative intent.[33]   The court then quoted the legislative history

which states:

> "The purpose of the preference section is two-fold.  First, by
> permitting the trustee to avoid prebankruptcy transfers that
> occur within a short period before bankruptcy, creditors are
> discouraged from racing to the courthouse to dismember the
> debtor during his slide into bankruptcy.  Second, and more
> important, the preference provisions facilitate the prime
> bankruptcy policy of equality of distribution among creditors
> of the debtor.  Any creditor that received a greater payment
> than others of his class is required to disgorge so that all may
> share equally."[34]

The *Check Reporting Services* court concluded that "the net result rule was modified [with

the insertion of "otherwise"] so that new value could only be used to set off preferences

received earlier.  Thus, the only sure defense to a preference was to continue dealing with

the debtor by supplying additional new value after receiving each preference."[35]

In *In re Hechinger Investment Company of Delaware*,[36] Judge Lindsey, relying on the

analysis in *Check Reporting Services, Inc.*, and in an advisory fashion, stated that he was

"inclined," in a running account or rolling account relationship between the debtors and

---

[33] *Id.* at 437.

[34] *Id.* (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 177 (1977), reprinted in 1978 U.S.Code Cong. &
Admin. pp. 5787, 6138).

[35] *Id.* at 437.

[36] *Hechinger Inv. Co. of Delaware, Inc. v. Universal Forrest Products, Inc. (In re Hechinger Inv. Co. of Delaware,
Inc.)*, Adv. Pro. No. 01-3170(PBL), 2004 WL 3113718 (Bankr. D. Del. Dec. 14, 2004).

the preference defendant, to adopt the "subsequent advance approach."  However, Judge

Lindsay did not make a ruling on the new value asserted in that case because he could

not "absent a waiver of the other asserted defenses under § 547(c) or a stipulation by the

parties as to that amount" of new value advanced because "a calculation under § 547(c)(4)

must be prefaced by a determination of whether the transfers made on account of new

value are 'otherwise avoidable.'"[37]

Thereafter, in *In re Pillowtex Corp.*,[38] Judge Carey considered whether new value

needed to remain "unpaid" in order to be a valid defense.  Judge Carey held that the

"subsequent advance approach" not only comported with the plain language by

section 547(c)(4)(B) but also furthered the two interrelated purposes set forth in *New York*

*Shoes*: section 547(c)(4) is (i) "designed to encourage trade creditors to continue dealing

with troubled businesses;" and (ii) "designed to treat fairly a creditor who has

replenished the estate after having received a preference."  Judge Carey also quoted the

Fifth Circuit in *Toyota of Jefferson*, which held:

> We consider first the role § 547(c)(4) was intended to play by
> the drafters of the Code.  The exception most obviously
> applies to revolving credit relationships.  Two policy
> considerations support the exception.  First, without the
> exception, a creditor who continues to extend credit to the
> debtor, perhaps in implicit reliance on prior payments, would

---

[37] *Id.* at *5 (*relying on Check Reporting Services v. The Water Doctor (In re Check Reporting Services, Inc.)*, 140 B.R. 425, 437-48 (Bankr. W.D. Mich. 1992)).

[38] *Wahoski v. American & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123 (2009).  *See also Successor Committee of Creditors Holdings Unsecured Claims v. Berger Brunswig Drug Company (In re Ladera Heights Cmty. Hosp., Inc.)*, 152 B.R. 964, 968 (Bankr. C.D. Cal. 1993) (adopting the subsequent advance rule and in reference to the legislative history of section 547(c)(4) stated:  "Most telling, however, is the fact that Congress deleted the restrictive language of former Section 60(c) which limited the new value exception to 'the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy.'" (citations omitted)).

merely be increasing his bankruptcy loss. Second, the limited protection provided by the subsequent advance rule encourages creditors to continue their revolving credit arrangements with financially troubled debtors, potentially helping the debtor avoid bankruptcy altogether. Protecting the creditor who extends "revolving credit" to the debtor is not unfair to the other creditors of the bankrupt debtor because the preferential payments are replenished by the preferred creditor's extensions of new value to the debtor.[39]

### iii.    Prior Rulings of this Court

In *In re Sierra Concrete Design, Inc.*, this Court held that "[i]n order to invoke successfully the subsequent new value defense in this Circuit the creditor must establish two elements: (1) after receiving the preferential transfer, the creditor must have advanced 'new value' to the debtor on an unsecured basis; and (2) the debtor must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition."[40]    The Court continued:

> Section 547(c)(4), which codifies the subsequent new value defense, provides that "[t]he trustee may not avoid under this section a transfer . . . to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor . . . on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." The statute's language is difficult to decipher containing, among other things, a double negative. Nonetheless, it correctly invokes the underlying economic principle—the creditor made subsequent shipment of goods only because the debtor was paying for the earlier shipments. Thus, one should and does look at the net result—the extent to which the creditor was preferred, taking account of the new value the creditor extended to the debtor after repayment on old loans.

---

[39] *Laker v. Vallette (In the Matter of Toyota of Jefferson, Inc.)*, 14 F.3d 1088, 1091 (5th Cir. 1994) (citations and internal quotations marks omitted).  *See also In re Pillowtex Corp.*, 416 B.R. at 131.

[40] *In re Sierra Concrete Design, Inc.*, 463 B.R. at 307-08 (citations omitted).

> In making this analysis, one need not link specific invoices to specific payments. Rather, one need only track the debits and credits generally. In addition, one cannot lose sight of the fact that the subsequent new value test is an affirmative defense. It makes no sense to apply the test in such a way to give the creditor a "credit" for new value in excess of its preference exposure.[41]

In effect, this Court adopted the subsequent advance approach with one clarification, that one cannot apply the test to give a credit for new value in excess of the preference exposure.

---

[41] *Id.* This Court continued:

> The subsequent new value defense protects creditors who provide new credit after an old invoice is paid off. Suppose a supplier ships $1,000 of goods with payment due within 30 days and the debtor pays the invoice at the end of those 30 days. Because the debtor is timely paying its debts, the supplier continues to provide goods with payment due in 30 days. Suppose further that, at the time the debtor files its bankruptcy petition, the creditor has shipped $1,000 worth of goods three times and has been paid for those goods all three times. Under the bright line preference rule, each of the transactions would be preferential as each was made on account of an antecedent debt and each made the creditor better off than it would have been if it not been repaid and everything else remained the same. It makes no sense, however, to allow recovery of all three $1,000 payments. The purpose of the creditor's supply arrangement was to limit its risk to $1,000 or so at any one time. The creditor made subsequent shipment of goods only because the debtor was paying for the earlier shipments. The transfers made the creditor better off only to the extent of $1,000, the most it would have lost if any of the transfers had not been made. Thus, one looks at the net result — the extent to which the creditor was preferred, taking account of the new value the creditor extended to the debtor after repayment of old credit, i.e., loans.

*Id.* at 305-06 (citations and footnotes omitted). *See also Burtch v. Masiz (In re Vaso Active Pharm.), Inc.*, 500 B.R. 384, 396 (Bankr. D. Del. 2013) ("Creditors are entitled to set off the amount of 'new value' which remains unpaid on the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received. In making an analysis of payments, however, one need not 'link specific invoices to specific payments ... rather, one need only track the debits and credits generally. One should only look to the net result — the extent to which the creditor was preferred, taking account of the new value the creditor extended to the debtor after repayment on old loans." (citations and internal quotation marks omitted.

Thereafter in *Sierra Concrete Designs, Inc.*, this Court continued with a descriptive chart explanation – which the Court will expand on herein:

| Date | Preference Payment | New Value | Preference Exposure as calculated in *In re Sierra Concrete Design, Inc.* | Remains Unpaid Approach | Subsequent Advance Approach[42] |
|---|---|---|---|---|---|
| January 1 | $1,000 | - | $1,000 | $1,000 | $1,000 |
| January 5 | - | $1,000 | $0 | | $0 |
| January 10 | $1,000 | - | $1,000 | $2,000 | $1,000 |
| January 15 | - | $2,000 | $0 (not -$1,000) | | -$1,000 |
| January 30 | $3,000 | - | $3,000 | $5,000 | $2,000 |
| February 5 | - | $1,000 | $2,000 | | $1,000 |
| February 10 | $1,500 | - | $3,500 | $6,500 | $2,500 |
| February 15 | | $1,000 | | | $1,500 |
| **Results** | | | **$2,500** | **$5,500** | **$1,500** |

The Court re-iterated this ruling in *In re Vaso Active Pharmaceuticals, Inc.*[43] Therein, the preference defendant received a preferential payment, provided services to the debtor, followed by a second preferential payment.[44]   The Court held that the defendant's preference exposure was: (i) the value of transfer #1; less (ii) the value of the services provided (i.e. new value provided); plus (iii) the value of transfer #2 (or as otherwise stated: ((value of transfer #1) – (new value provided) + (value of transfer #2)).[45]   Although

---

[42]   Many of the courts have not analyzed what happens when the new value exceeds the preference exposure.  However, out of an abundance of caution, as this issue is not specifically addressed, the Court will assume that without such consideration, the net result would be as listed herein.

[43]   *In re Vaso Active Pharm., Inc.*, 500 B.R. 384.

[44]   *Id.* at 396.

[45]   *Id.* at 396-397.

not explicitly identified as such, the Court believes that its previous rulings have, at least by inference, adopted the subsequent advance approach.

### iv.    Application to the Case *Sub Judice*

The parties appear to agree that the Transfers were made during the 90-days prior to the Petition Date, that the transfers were property of one or more of the Debtors, and that the Transfers were made by check or wire transfer.[46]  Furthermore, as this is a Chapter 7 case and creditors are not being paid in full, the Court further finds that Defendant is better off as a result of the Transfers than as a claimant in a liquidating Chapter 7 case.  The Trustee did not provide evidence that the Transfer were on account of antecedent debt[47] - however, based on the relationship between the parties and the arguments asserted by Defendant in these motions, the Court herein finds that the Transfers were on account of antecedent debt.[48]  As such, the Court finds that the Paid SNV transfers are "otherwise avoidable."

---

[46] *See* Defendant JNJ Logistics LLC's Corrected Response to Requests for Admission (attached as Exhibit A to Trustee's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment (D.I. 50)).

[47] *Burtch v. Detroit Forming, Inc. (In re Archway Cookies)*, 435 B.R. 234, 240 (Bankr. D. Del. 2010) ("The trustee or debtor bears the burden of proving each of these elements.") (citations and internal quotations marks omitted) *aff'd sub nom. In re Archway Cookies LLC*, BR 08-12323-CSS, 2013 WL 6137524 (D. Del. Nov. 20, 2013).

[48] The Court is troubled by the lack of evidence provided in the Trustee's Cross Motion in support of the preference claim.  The Trustee did not provide *any* evidence to support its preference claim, other than Defendant's Corrected Responses to Plaintiff's Requests for Admissions (which deny several of the necessary elements to establish a preferential transfer).  However, in its reply, Defendant did not contest the various elements of the asserted preferential transfer.  *See* Fed. R. Civ. Pro. 56(e)(2) (stating that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion . . ."); made applicable by Fed. R. Bankr. P. 7056.  As aforementioned, this matter comes before the Court on motions for summary judgment where the Court *must* make factual findings (or find that there is a genuine issue of material fact).  *See* Fed. R. Civ. P. 56(a).

Thus, the Court will follow its rulings in *Sierra Concrete Design, Inc.* and *Vaso Active Pharmaceuticals, Inc.* and adopt the subsequent advance approach in calculating the amount of Defendant's subsequent new value defense. As application of the net result of the preferential transfers and subsequent new value (paid and unpaid) never resulted in Defendant's preference exposure falling below $0, Defendant is entitled to full credit for all subsequent new value it provided to the Debtors, including Paid SNV and Unpaid SNV. Based upon the exhibits attached to the brief in support of Defendant Motion,[49] application of the net result calculation that includes (or disregards the distinction between) Paid SNV and Unpaid SNV in this case reduces Defendant's preference exposure by $271,411.39.[50]

## CONCLUSION

For the reasons set forth above, the Court will grant Defendant's partial motion for summary judgment and will deny the Trustee's cross-motion for partial summary judgment. Defendant has established that it is entitled to partial summary judgment upon application of the subsequent new value defense in the amount of $271,411.39, thus reducing Defendant's preference exposure in that amount. An order will be issued.

---

[49] Adv. D.I. 48 (Exhibits A and B)

[50] As set forth *surpa*, the Court is only considering Defendant's subsequent new value defense. The Court is not ruling upon the Trustee's remaining claim in the amount of $276,624.27.